Filed 8/28/23  In re G.E. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re G.E., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E081092 |
| Plaintiff and Respondent, | (Super.Ct.No. J292049) |
| v. | OPINION |
| S.S., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Steven A. Mapes, Judge.  Conditionally reversed with directions.

Tracy M. De Soto, under appointment by the Court of Appeal, for Defendant and Appellant.

Tom Bunton, County Counsel, and Joseph R. Barrell, Deputy County Counsel, for Plaintiff and Respondent.

1

S.S. (mother) appeals from an order terminating her parental rights to her son G.E. (the child). Mother's sole claim of error is that the San Bernardino County Children and Family Services (CFS) did not comply with its duty to adequately inquire whether the child was an Indian child under the Indian Child Welfare Act of 1978 (ICWA; 25 U.S.C. § 1901 et seq.) and related state law. More specifically, she argues CFS failed to make sufficient inquiry by locating mother's and father's biological parents (both mother and father were adopted as children) and obtain information about possible Indian ancestry.[1]

CFS contends its duty to contact extended family members when inquiring into whether a child is an Indian child was not triggered in this case because the child was detained pursuant to a detention warrant. In any event, CFS contends the inquiry it made as to the child's maternal grandmother (mother's biological mother) was sufficient. However, CFS concedes it did not inquire into the name of father's biological mother (the child's paternal grandmother), through whom father claimed his Indian ancestry, and that a limited remand for further inquiry and noticing as to father is appropriate.

We need not address whether CFS had the duty to inquire of extended family members under the circumstances of this case, because, even if it erred by not making a meaningful effort to contact and interview mother's biological mother, the error was harmless. In addition, we accept CFS's concession that conditional reversal with a limited remand is appropriate for it to conduct further inquiry as to father's biological

---

[1] "'[B]ecause ICWA uses the term "Indian," we do the same for consistency, even though we recognize that other terms, such as "Native American" or "indigenous," are preferred by many.'" (*In re Dominick D.* (2022) 82 Cal.App.5th 560, 563, fn. 1.)

mother and for any additional inquiry and notice as the juvenile court may deem appropriate. Therefore, we conditionally reverse the orders terminating parental rights and remand for additional ICWA inquiry and new notice to relevant Indian tribes, if appropriate.

## I.

## FACTS AND PROCEDURAL HISTORY

Because mother challenges none of the juvenile court's other findings made before or during the permanency hearing, we will focus primarily on the limited facts that bear on CFS's inquiry and notice under ICWA.

After investigating a report of abuse or neglect because part of the child's ear had been cut off, CFS removed the child from mother and father[2] pursuant to a protective custody warrant. At the initial detention hearing, the juvenile court made a prima facie finding that the child should be detained and that visits with the parents would be detrimental to the child. Thereafter, the juvenile court found true the allegations of neglect and severe physical abuse pleaded in an amended petition, declared the child to be a dependent of the court pursuant to Welfare and Institutions Code[3] section 300, subdivisions (a), (b), (e), and (i), bypassed reunification services and visitation because the parents themselves were in custody and because it would be detrimental to the child,

---

[2] Father did not appeal the order terminating his parental rights to the child, but our conditional reversal will inure to his benefit. (See Cal. Rules of Court, rule 5.725(a)(1), (f); all further references to rules will be to the Cal. Rules of Court.)

[3] All undesignated statutory references are to the Welfare and Institutions Code.

and set a permanency hearing under section 366.36 for termination of parental rights. At the close of the permanency hearing, the juvenile court found the child was likely to be adopted, found inapplicable the parent-child beneficial interest exception to termination of parental rights, and terminated mother and father's parental rights to the child.

The detention report submitted by CFS stated that mother had initially denied having any Indian ancestry. Father had indicated he had possible Apache and Navajo ancestry. Therefore, CFS informed the juvenile court that it had reason to believe the child was or might be an Indian child. At the detention hearing, the juvenile court stated it had tried to call "the grandfather" (the record is unclear whether this meant the mother's or the child's grandfather) to make "some ICWA inquiry," but the court had been unable to reach him. Moreover, neither parent made an appearance, so the court was unable to make any ICWA inquiry from them directly.

In a report submitted for the jurisdiction and disposition hearing, CFS continued to opine that ICWA does or may apply. The social worker reported that mother now claimed she might have Indian ancestry based on what she had read in the paperwork for her own adoption. Mother said she was not a registered member of a tribe and had never lived on an Indian reservation. Mother completed a "Parent: Family Find and ICWA Inquiry" form indicating that she did not know whether she had Indian ancestry. She provided some contact information for the child's godmother (a first name, but no last name), maternal grandmother, and maternal great-grandmother. Mother's parental notification of Indian status (ICWA-020) form indicated that neither she nor the child were members or eligible for membership in an Indian tribe. When contacted by the

social worker, the maternal great-grandmother (mother's biological grandmother) reported having no knowledge of Indian ancestry.

At father's first appearance, the juvenile court inquired into his possible Indian ancestry. Father told the juvenile court he had Apache and Navajo ancestry, but that neither he nor the child were registered members. He told the court that his biological mother was both Apache and Navajo, that he believed his mother had one parent that was Apache and one that was Navajo, but that he did not know whether his mother was a registered tribal member or whether she had been born on or had ever lived on an Apache or Navajo reservation. Father also informed the juvenile court that his biological mother was still alive and living in Sacramento, but he did not have her phone number.

Father completed a "Parent: Family Find and ICWA Inquiry" form, and indicated he does or may have Indian ancestry with Apache and Navajo tribes in Arizona. He provided no information for relatives who know of his Indian ancestry. Father did list his sister (the child's paternal aunt) as an additional family contact person. When contacted by the social worker, the paternal aunt confirmed that she and father had read in their adoption paperwork that their biological mother had Indian ancestry, but neither had any further details and neither had any contact with their biological mother. She also reported that neither she nor father had ever registered with an Indian tribe or lived on a reservation, and their Indian ancestry "was only suspected."

At the jurisdiction and disposition hearing, the juvenile court followed CFS's recommendation and found that ICWA did not apply. However, CFS continued to make ICWA inquiries prior to the permanency hearing. In the report submitted for the

5

permanency hearing, CFS reported the social worker had interviewed the paternal aunt a second time, during which she specified possible Apache and Navajo ancestry but that otherwise her representations remained the same. Another paternal aunt also indicated that the Apache and Navajo tribes were listed in her adoption paperwork but that she was not a registered member and she had no contact information for other relatives. The social worker left a message for the child's paternal great-aunt, but no response was received. Father's adoptive mother denied having any knowledge of Indian ancestry except what she had been told by father and his sister(s).

The social worker also contacted mother's biological grandmother a second time and she again denied having any Indian ancestry. Likewise, the child's maternal great-aunt denied having any Indian ancestry. The social worker tried to contact a second maternal great-aunt, but no response was received. Mother's adoptive mother told the social worker that mother has no Indian ancestry. The social worker tried unsuccessfully to contact mother's stepfather. Mother's "great cousin" denied having Indian ancestry and told the social worker that the child's biological maternal grandmother was incarcerated in Arizona. However, the social worker was unable to contact the maternal grandmother. Finally, the social worker spoke with the child's godmother (who mother listed on the ICWA inquiry form with a first name only). She said she was unaware of mother having any Indian ancestry.

Based on its inquiries, CFS mailed certified letters to all Apache and Navajo tribes. Three of the Apache tribes responded and reported the child was not a member or eligible for membership. Five of the Apache tribes, including the Jicarilla Apache Nation

6

of New Mexico, made no response.[4]  The Navajo Nation responded that it was unable to verify whether the child was eligible for membership.

## II.

## DISCUSSION

"ICWA establishes minimum federal standards that a state court must follow before removing Indian children from their families.  [Citation.]  California law implementing ICWA also imposes requirements to protect the rights of Indian children, their families, and their tribes.  (See §§ 224-224.6; [citation].)  An Indian child is any unmarried person under 18 who 'is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe.'  (25 U.S.C. § 1903(4); see § 224.1, subd. (b).)"  (*In re Ricky R.* (2022) 82 Cal.App.5th 671, 678.)

---

[4]  On June 1 and 8, 2023, mother requested that this court take judicial notice of the fact that, according to United States Postal Service tracking, the notice mailed to the Jicarilla Apache Nation of New Mexico had never been received and is still in transit. (Evid. Code, §§ 452, subd. (h), 459, subd. (a); rule 8.252(a).)  In the alternative, mother requests that we exercise our authority to take new evidence.  (Cal. Const., art. VI, § 11, subd. (c); Code Civ. Proc., § 909; rule 8.252(b), (c).)  Mother contends the notice mailed to this tribe was not received "due to an insufficient address."  CFS opposed both requests.  By orders dated June 8 and 16, 2023, we deferred ruling on mother's requests.

Separately, to counter mother's assertion that the ICWA notice mailed to the Jicarilla Apache Nation of New Mexico contained an insufficient address, on June 15, 2023, CFS requested that we take judicial notice of the post office box for the tribe as published by the United States Department of the Interior, Bureau of Indian Affairs, in 87 Federal Register 22552, 22571 (Apr. 15, 2022).  (Evid. Code, §§ 451, subd. (b), 459, subd. (a); rule 8.252(a); see 44 U.S.C. § 1507.)  Mother opposed this request.  By order dated June 30, 2023, we deferred ruling on the request.

The requests for judicial notice are hereby granted, and mother's alternative request to take additional evidence is denied.

"'Because it typically is not self-evident whether a child is an Indian child, both federal and state law mandate certain inquiries to be made in each case.' [Citation.] [CFS] and the juvenile court have an 'affirmative and continuing duty to inquire' whether a child in a dependency proceeding 'is or may be an Indian child.' (§ 224.2, subd. (a).) The duty to inquire consists of two phases—the duty of initial inquiry and the duty of further inquiry. [Citation.] ICWA also imposes a duty to provide notice of the proceedings to the pertinent Indian tribes. (25 U.S.C. § 1912(a); § 224.3, subd. (a).) Notice enables the tribes 'to determine whether the child involved in a dependency proceeding is an Indian child and, if so, whether to intervene in, or exercise jurisdiction over, the matter.'" (*In re Ricky R.*, *supra*, 82 Cal.App.5th at p. 678.)

"The duty of initial inquiry applies in every dependency proceeding. [Citation.] Federal regulations require state courts to ask each participant 'at the commencement' of a child custody proceeding 'whether the participant knows or has reason to know that the child is an Indian child.' (25 C.F.R. § 23.107(a) (2022).) State law requires the court to pursue an inquiry '[a]t the first appearance in court of each party' by asking 'each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child.' (§ 224.2, subd. (c).) In addition, when [CFS] takes a child into temporary custody, the agency must ask 'the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child,' and the reporting party whether the child is or may be an Indian child. (§ 224.2, subd. (b).) Extended family members include adults who are the child's stepparents, grandparents, siblings, brothers-or sisters-in-law, aunts, uncles, nieces, nephews, and first or second

8

cousins. (25 U.S.C. § 1903(2); § 224.1, subd. (c).)" (*In re Ricky R.*, *supra*, 82 Cal.App.5th at pp. 678-679.)

There is currently a split within this division about whether a social service agency has the duty to inquire of extended family members under section 224.2, subdivision (b), when the child is taken in custody pursuant to a detention warrant. (Compare *In re Robert F.* (2023) 90 Cal.App.5th 492, review granted July 26, 2023, S279743 ; *In re Ja.O.* (2023) 91 Cal.App.5th 672, review granted July 26, 2023, S280572 [adopting the reasoning of *Robert F.*]; *In re Andres R.* (Aug. 23, 2023, E079972) __ Cal.App.5th __ [2023 Cal.App. Lexis 638] [majority opinion defending *Robert F.* and *Ja.O.*] with *In re Delila D.* (2023) 93 Cal.App.5th 953 [majority opinion concluding *Robert F.* was wrongly decided].) The California Supreme Court is poised to decide that issue, and we need not address it further because its resolution is not determinative in this case. Even assuming CFS had a duty to inquire of extended family members, failure to do so in this case with respect to mother's biological family was harmless.

Mother argues CFS failed to make a meaningful attempt to contact her biological mother. As indicated, the report submitted for the permanency hearing stated the social worker learned from a maternal "great cousin" that mother's biological mother was incarcerated in Arizona. The report states the social worker "was unable to make contact" with mother's biological mother. CFS concedes the report should have provided more specifics about what efforts the social worker made to contact mother's biological mother, but ultimately it argues any failure to make meaningful efforts was harmless. We agree the error, if any, was harmless.

This court has held: "When [the child welfare agency] fails to comply with the duty of initial inquiry under state law, we will find the error to be prejudicial and conditionally reverse if 'the record indicates that there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child.'" (*In re Ricky R.*, *supra*, 82 Cal.App.5th at p. 679, quoting *In re Benjamin M.* (2021) 70 Cal.App.5th 735, 744; accord, *In re D.B.* (2022) 87 Cal.App.5th 239, 245.) "That standard does not require 'proof of an actual outcome (that the parent may actually have Indian heritage).' [Citation.] The missing information need only be relevant to the ICWA inquiry, 'whatever the outcome will be.'" (*In re Ricky R.*, at p. 679.)

As indicated, mother initially claimed to have no Indian ancestry, but later reported she might have Indian ancestry based on what she had read in her adoption papers. Twice, the child's maternal great-grandmother told the social worker that she had no knowledge of mother having Indian ancestry. One of the child's maternal great-aunts denied having any Indian ancestry, and the social worker was unable to contact a second maternal great-aunt. Mother's adoptive mother told the social worker that mother had no Indian ancestry, but the social worker was unable to speak to mother's stepfather. Mother's "great cousin" denied having any Indian ancestry. Finally, mother's godmother told the social worker she was unaware of mother having any Indian ancestry.

Even if we were to agree with mother that, with reasonable diligence, CFS could have tracked down the child's maternal grandmother and asked her about possible Indian ancestry, we would conclude any information she might provide was *not* "'likely to bear *meaningfully* upon whether the child is an Indian child.'" (*In re Ricky R.*, *supra*,

10

82 Cal.App.5th at p. 679, italics added.) The maternal grandmother's own mother and aunt denied having any Indian ancestry or having any knowledge of such ancestry. Who better would know whether maternal grandmother herself has Indian ancestry? Moreover, mother's adopted mother (who presumably would have firsthand knowledge of the contents of mother's adoption paperwork) and her godmother both denied that mother had any Indian ancestry.[5]

The same is not true for father's family. Father consistently stated that, on his biological mother's side, he had Indian ancestry through Apache and Navajo tribes in Arizona. His sister confirmed this to the social worker. And father told the juvenile court that his biological mother was alive and living in Sacramento. Yet, the record fails to show any meaningful effort by CFS to learn the name of father's biological mother's and to locate and interview her. CFS contends the information father provided to the juvenile court about his biological mother was vague and that a search for her would not have netted meaningful information because father's claim of Indian ancestry had already been confirmed by his sister. However, CFS concedes it erred by not obtaining the name of father's biological mother and providing it to the relevant Indian tribes during noticing. CFS does not oppose a limited remand for it to obtain that information and provide new notice.[6]

---

[5] For the same reason, we conclude CFS's failure to search mother's adoption papers, if error, was harmless.

[6] Because we remand for additional inquiry into father's biological mother and, if appropriate, for additional notice to the relevant Indian tribes, mother's claim of error

*[footnote continued on next page]*

11

We accept CFS's concessions but, in the interest of judicial efficiency, we will direct that on remand CFS must inquire into the name of father's biological mother *and* make meaningful efforts to locate, contact, and inquire of her about the child's possible Indian ancestry.

## III.

## DISPOSITION

The juvenile court's orders terminating the parental rights to the child are conditionally reversed. On remand, the juvenile court shall direct CFS to provide the court with a supplemental report detailing what additional efforts, if any, it has taken to obtain information about the child's possible Indian ancestry, including the names and other relevant information of family members interviewed. The juvenile court shall then determine whether the ICWA inquiry was adequate and, if applicable, whether proper notice has been given to relevant Indian tribes. If the juvenile court determines the inquiry completed and the notice given were adequate (and, if after receiving notices, the relevant tribes do not respond or respond that the child is not an Indian child within the meaning of ICWA), the orders terminating parental rights to the child shall immediately be reinstated and further proceedings shall be conducted as appropriate.

In the alternative, if the juvenile court determines the inquiry and/or notice conducted was inadequate, it shall direct CFS to conduct additional inquiry and provide

---

with respect to the notice not received by the Jicarilla Apache Nation of New Mexico is premature. (See *ante*, fn. 3.) Mother can address that argument to the juvenile court when it determines whether additional notice to the relevant tribes is required.

additional notice to the relevant Indian tribes of any additional relevant information CFS might have received. The court shall then determine whether the additional inquiry and notice are adequate. If, after receiving notices, the relevant tribes do not respond or respond that the child is not an Indian child within the meaning of ICWA, the orders terminating parental rights to the child shall immediately be reinstated, and further proceedings shall be conducted, as appropriate.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
Acting P. J.

We concur:


MILLER
J.


RAPHAEL
J.